Read, J.
The defendants hold under Kerr. Kerr had contracted to sell the land in question. Possession had been taken and consideration money paid prior to 1812, when Moore’s devisees filed their bill in the circuit court of the United States, to compel from Kerr an assignment of tho military land warrants, by virtue-of which the legal title was to be perfected to defendants and those under whom they hold, under said contract of purchase from Kerr. Kerr, in performance of this contract, in 1814 and 1817, executed deeds, with general covenants of warranty, pending said suit. The legal title was still in the United States. In 1827, a decree was rendered in said circuit court of the United States, in favor of'Moore’s devisees. Kerr never complied with said decree, nor was it in any manner enforced prior to 1839. On April 10, 1838, patents for the land in question issued in the name of Joseph Kerr, then deceased
The decree in favor of Moore’s devisees and the entire chancery proceeding lay dormant and abated, by the death of Kerr, until 1839, when Trimble, as assignee of Moore’s devisees, was permití ed to make himself a party, by supplemental bill and revivor, and obtained a decree, by consent, against Kerr’s heirs; and in compliance with such decree, a conveyance from them to him, and a patent from the United States.
Two legal questions arise as to the doctrine of lis pendente purchasers ; and the effect of the act of Congress of 1836, concerning patents issuing in the name of deceased persons.
* If the interest in these lands, acquired by purchase from Kerr, was to be affected by tho suit of Moore’s devisees — such interest existing prior to tho commencement of said suit — the persons so interested should have been made parties. Not having been made parties, it was their right to clothe their equity with the legal title, as though such suit had not existed, and as decided in respect to a like state of facts, at the'term of this court, Barr et al. v. this plaintiff. But it must be observed that the legal title to the warrants had not been divested from Kerr or his heirs, prior to the issuing of the patent for these lands in his name, as the decree of 1827 had not been complied with. At the timo the patent issued in Kerr’s name the suit was not ponding; it had been dormant for many years and had abated by the death of Kerr. And, to authorize the doctrine of Us pendens, as to Kerr’s heirs, the prosecution of the suit must have been close and continuous. Had *117 Kerr, then, been in life in 1838, when the patent issued, he would have been clothed with the legal title, which would have inured to the benefit of his grantees, under the general covenants of warranty. To whom else could it inure? Moore’s devisees had nothing but an equity. A'nd, admitting even that the deeds of Kerr, of 1814 and 1817, could not have prevailed against deeds made by Kerr, in compliance with the decree of 1827, in consequence of the doctrine of lis pendens, yet the covenants in said deeds would be in full force and life against Kerr; and, if Kerr should, after such suit had been suffered to become dormant, acquire the legal title, it would inure to his covenantees; because the doctrine of inurement is nothing more than an estoppel, to prevent an eviction which would authorize a suit for breach of covenants — or, more comprehensively, and by embracing the covenant of seizin — a performance of covenants by operation of law, instead of resort to action. Kerr, then, could not have evicted these defendants under his patent, because estopped by his covenants. Had he deeded these lands to these defendants in 1838, such deed would have been good as against Moore’s devisees; because, at that time, no suit respecting them was in *elose and continuous prosecution, nor had been since 1837. Hence the covenants of 1814 and 1817, being in life against Kerr, attached at the time of his acquiring the legal title by patent, and have the same force and effect of a deed, with covenants of general warranty, if then, for the first time, made. Hence, the legal title in 1838 was in these defendants ; and if Moore’s devisees, or Trimble, their assignee, held the equity, they would be compelled to make them parties, to compel legal title, if Kerr had been in life. Does the death of Kerr, at the time the patent issued, make any difference? As between Kerr’s heirs and these defendants, there is no question but the act of Congress of 1836 vests the legal title, by the patent, in these defendants; how does Trimble, the assignee of Moore’s devisees, claim that it does not? Upon the principle that a continuous suit was in prosecution against Kerr, and that they had a right to a decree against his heirs, and that these defendants thrust themselves in, and, if permitted to hold, would defeat the object of the original suit. The answer to this is two-fold: that the suit was not a suit in close continuous prosecution, at the time the legal title was vested in these defendants, nor at the time *118 of the commencement of the suit had Kerr the legal title; and that the bill sought no such relief.
The act of Congress, then, in no sense can vest Kerr’s heirs ■with the legal title, nor does it execute a simple trust; but divests the legal title conferred by the patent, in the channel of inheritance or purchase. If not, the effect of the law would have been to invest Moore’s devisees, or Trimble, their assignee, with the legal title; and there would have been no need to have revived the suit against Kerr’s heirs. But it is only claimed that the law conferred the legal title upon Kerr’s hi irs for the benefit ofMoore’s devisees or their assignee. But the inheritance of Kerr’s heirs was cut off by the deeds of their ancestor.
Thus the legal title was in the defendants, by virtue of the deeds of Kerr and patent, before Trimble obtained deeds from *Kerr’s heirs, and patent for himself; and if Trimble, the plaintiff, have any remedy, it is in equity.
Judgment for defendants.